Jimmie Lucile Hooks desired to remodel a portion of her residence. She engaged an architect, George Hunter, Jr., to draw the necessary plans. Hunter suggested to Hooks that she employ Theodore Pickens d/b/a Pickens Home Repair ("Pickens") to complete the remodeling work. Hooks and Pickens entered into a contract for the remodeling work. Ultimately, Hooks became dissatisfied with Pickens's work and she refused to pay him.
Pickens then sued Hooks, alleging breach of contract and seeking $8,685 for labor, materials, and interest. Hooks counterclaimed seeking damages for poor workmanship and specified damages in the amount of $1,900, which she had expended to complete the remodeling work to her satisfaction. Hooks filed a motion for a summary judgment, arguing that Pickens, who was not licensed by the Home Builders Licensure Board, had no standing to sue alleging a breach of contract.See Ala. Code 1975, § 34-14A-14; seegenerally Ala. Code 1975, § 34-14A-1 et seq. ("the home builders licensure statute"). Pickens responded by arguing that he was not required to have a license pursuant to an exemption in the home builders licensure statute applicable to property owners like Hooks who were acting as their own contractors.See Ala. Code 1975, § 34-14A-6(5). The trial court denied Hooks's summary-judgment motion, and the case proceeded to trial. After the trial, the trial court entered a judgment awarding Pickens $6,785.[1] Hooks appeals.[2]
In 1992, the Alabama Legislature enacted a statutory scheme designed "to regulate the residential home building and remodeling construction industries." See Ala. Code 1975, § 34-14A-1. The home builders licensure statute requires that *Page 1031 
residential home builders be licensed. § 34-14A-5. A "residential home builder" is defined in the statute as:
 "One who constructs a residence or structure for sale or who, for a fixed price, commission, fee, or wage, undertakes or offers to undertake the construction or superintending of the construction, of any residence or structure which is not over three floors in height and which does not have more than four units in an apartment complex, or the repair, improvement, or reimprovement thereof, to be used by another as a residence when the cost of the undertaking exceeds ten thousand dollars ($10,-000)."
§ 34-14A-2(10). The statute, among other things, also created the Home Builders Licensure Board, § 34-14A-3, set certain licensing requirements, §§ 34-14A-5 and -7, provided a procedure for the revocation or suspension of licenses, § 34-14A-8, and established a Homeowner's Recovery Fund, § 34-14A-15. In addition, the home builders licensure statute provides certain penalties for the failure to obtain a license. § 34-14A-14. The statute further provides for exemptions from the requirement that a person performing home building or remodeling be licensed. § 34-14A-6.
In order to determine whether Pickens was properly awarded damages on his breach-of-contract claim, we must construe certain sections of the home builders licensure statute.
 "`"In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
 "`"`"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."'"'
 "Richardson v. Terry, 893 So.2d 277, 283
(Ala. 2004) (quoting DeKalb County LP Gas Co. v. Suburban Gas, 729 So.2d 270, 275-76 (Ala. 1998)). `"When ascertaining legislative intent, statutes which are in pari materia . . . must be interpreted as a whole in light of the general purpose of the statute."' Ex parte Berry-hill, 801 So.2d 7, 10 (Ala. 2001) (quoting Kirkland v. State, 529 So.2d 1036, 1038 (Ala.Crim.App. 1988))."
Blackmon v. Brazil, 895 So.2d 900, 907 (Ala. 2004).
The legislature expressed its intent in enacting the home builders licensure statute in § 34-14A-1, which reads, in part, as follows:
 "In the interest of the public health, safety, welfare, and consumer protection and to regulate the home building and private dwelling construction industry, the purpose of this chapter, and the intent of the Legislature in passing it, is to provide for the licensure of those persons who engage in home building and private dwelling construction, including remodeling, and to provide home building standards in the State of Alabama. . . . Home builders may pose significant harm to the public when unqualified, incompetent, or dishonest home building contractors and remodelers provide inadequate, unsafe or inferior building services. . . ."
Thus, the purpose behind the licensing requirements of the home builders licensure statute is the protection of the public from "unqualified, incompetent or *Page 1032 
dishonest home building contractors and remodelers." In furtherance of the protection of the public, the legislature made engaging in the home-building business without a license a Class A misdemeanor. § 34-14A-14. In addition, and in recognition of the "well-established rule that if the purpose of a licensing statute is the regulation of the business licensed and not merely the collection of revenue, a person not licensed cannot enforce a contract for services rendered within the scope of the regulated business," Tucker v. Walker,293 Ala. 589, 592, 308 So.2d 245, 247 (1975), the legislature made it impossible for an unlicensed home builder to maintain an action to enforce any provision of a contract for home-building services. § 34-14A-15.
However, the legislature determined that certain individuals would not be required to be licensed. Those individuals, as enumerated in § 34-14A-6, are:
 "(1) Any employee of a licensee who does not hold himself or herself out for hire or engage in contracting, except as such employee of a licensee.
 "(2) An authorized employee of the United States, the State of Alabama, or any municipality, county, or other political subdivision, if the employee does not hold himself or herself out for hire or otherwise engage in contracting except in accordance with his or her employment.
 "(3) General contractors holding a current and valid license, issued prior to January 1, 1992, under Sections 34-8-1 through 34-8-27.
 "(4) Licensed real estate agents operating within the scope of their respective licenses on behalf of clients.
 "(5) Owners of property when acting as their own contractor and providing all material supervision themselves, when building or improving one-family or two-family residences on such property for the occupancy or use of such owners and not offered for sale."
Because Pickens does not contest that he is a residential home builder as defined in § 34-14A-2(10), the present case turns primarily on the application two other sections of the home builders licensure statute — §§ 34-14A-14 and34-14A-6. Hooks argues that, pursuant to § 34-14A-14, Pickens is not entitled to "bring or maintain [an] action to enforce the provisions of [the] contract for residential home building which he . . . entered into in violation of this chapter." Pickens, however, contends that, pursuant to the exemption for "[o]wners of property when acting as their own contractor and providing all material supervision themselves," § 34-14A-6(5), he was not required to be licensed; he also argues that Hooks waived her rights under the statute by qualifying for the exemption. The trial court, in ruling in favor of Pickens, must have determined that Hooks had qualified for the exemption in § 34-14A-6(5); that Pickens, by virtue of Hooks's exemption, was also exempt from the requirement that he be licensed; and, therefore, that Pickens was not prohibited by § 34-14A-14 from maintaining his breach-of-contract action. In order to determine if the trial court correctly concluded that Pickens was entitled to maintain his breach-of-contract action, we must determine whether §34-14A-6(5) applies to exempt not only Hooks, but also Pickens, from the licensing requirements of the statute.
The testimony at trial established that Hooks, through her son Darrell Hooks, applied for a building permit with the City of Birmingham. The service manager and custodian of records for the building department of the city, Cory Smith, testified that "[w]hen an owner comes in and wishes to take out an application for a permit, we have them sign an affidavit stating that *Page 1033 
they are going to act as the general contractor for the work being done." According to Smith, a homeowner who signs such an affidavit is exempted from the protection of the statute. However, Pickens did not produce a copy of an affidavit signed by either Hooks or her son Darrell as her agent, and, in fact, Smith testified that the building department had no such document. Thus, Hooks contends that the trial court's apparent conclusion that she applied for the exemption under the statute is not supported by the evidence and, therefore, the trial court's judgment must be reversed. In addition, Hooks argues that she could not have qualified for the exemption because she did not "provid[e] all material supervision" herself, as §34-14A-6(5) requires. Instead, she points out, the testimony at trial revealed that Pickens did not need or take any construction advice from her.
We see an even more basic reason that Pickens could not have availed himself of Hooks's exemption, provided she qualified for one — the language of the home builders licensure statute precludes it. Section 34-14A-6(5) exempts from the licensing requirements "[o]wners of property" provided they meet certain criteria. Nothing in the statute indicates that a residential home builder who performs residential construction or remodeling at the request of an owner is exempt under § 34-14A-6(5). The plain language of the statute extends the exemptiononly to the owner of the property, not to those who may perform the work at his or her direction. As the Alabama Home Builders Licensure Board argues in its amicus curiae brief, if we were to hold otherwise, residential home builders and remodelers could avoid the licensure requirements by simply having owners of property take out permits in their own name and relying on § 34-14A-6(5), thus defeating the purpose of the home builders licensure statute.
Even if § 34-14A-6(5) applied to exempt Hooks under these circumstances, which we need not and do not decide, it could not, as Pickens argues and the trial court must have determined, exempt Pickens from the licensure requirements of the home builders licensure statute. Because Pickens was not licensed and was not exempt from the licensing requirement of the home builders licensure statute, Pickens was not entitled to maintain a breach-of-contract action against Hooks. § 34-14A-14. The trial court's judgment in Pickens's favor on his breach-of-contract claim is therefore reversed.
REVERSED AND REMANDED.
THOMPSON, PITTMAN, MURDOCK, and BRYAN, JJ., concur.
[1] Although the judgment did not specifically mention Hooks's counterclaims, the trial court's judgment awards Pickens an amount equal to his requested damages minus the amount of Hooks's requested counterclaim damages for completion of the remodeling work; thus, we conclude that the trial court adjudicated Hooks's counterclaims in part in her favor and set off the amount of damages she was entitled to receive against Pickens's recovery. See Lowe v. Morrison,412 So.2d 1212, 1213 (Ala. 1982) ("There is ample authority for allowing a contractor to recover for a balance due on his contract, while at the same time allowing the owner to recover . . . damages for unworkmanlike or incomplete performance."); see alsoRose v. Davis, 474 So.2d 1058 (Ala. 1985) (stating that an owner may set off damages he is awarded against those awarded a contractor in the same action). See, generally, Roberts v.Security Trust Sav. Bank, 470 So.2d 674, 675
(Ala. 1985) (holding that when a trial court enters a judgment in favor of a plaintiff in full, the defendant's counterclaim is implicitly denied). Hooks does not raise any issues pertaining to the adjudication of her counterclaims on appeal.
[2] The Alabama Home Builders Licensure Board sought and received permission to appear as amicus curiae in support of Hooks's position on appeal.