MOORE, Judge.
 

 Veleta Williams and Williams Group Homes, Inc. (“WGH”), appeal from a summary judgment entered by the Mobile Circuit Court on May 29, 2008, in favor of Paula Hill and Hill’s Group Home, Inc. (“HGH”). We affirm the judgment in part and dismiss the appeal in part.
 

 Procedural History
 

 On September 27, 2005, Williams and WGH filed a civil action in the Mobile Circuit Court against Hill and HGH. In the complaint, Williams and WGH alleged that they had entered into an oral agreement with Hill and HGH on March 15, 2003, and that that agreement required
 
 *231
 
 Williams to provide consulting services to assist Hill and HGH in starting and maintaining a group home for developmentally disabled individuals in exchange for 60% of the net profits of that business. Williams and WGH also alleged that, pursuant to that agreement, Hill and HGH had promised to retain the services of WGH in supervising the business. Williams and WGH alleged that Hill and HGH had breached the agreement by failing to pay Williams or to retain the services of WGH. Williams and WGH further alleged that WGH had provided Hill and HGH $20,000 worth of improvements to property located at 1551 Forest Street in an effort to meet state standards for the operation of a group home at that location. Williams and WGH sought damages from Hill and HGH under the theories of breach of contract, quantum meruit, promissory estoppel, money had and received, conversion, constructive trust, fraud, and suppression.
 

 Hill and HGH filed a timely answer and a counterclaim against Williams and WGH. Thereafter, the parties engaged in discovery. On April 4, 2008, Hill and HGH filed a motion for a summary judgment on Williams and WGH’s claims, along with a supporting narrative statement of undisputed facts and memorandum of law. On April 21, 2008, Williams and WGH filed their response to the summary-judgment motion. Hill and HGH replied to that response on May 7, 2008. After conducting a hearing on the motion, the trial court entered a summary judgment in favor of Hill and HGH on Williams and WGH’s claims on May 27, 2008. On July 17, 2008, the trial court dismissed Hill and HGH’s counterclaim. Williams and WGH filed their notice of appeal of the May 27, 2008, summary judgment on August 19, 2008.
 

 Issues
 

 Williams and WGH argue on appeal that the trial court erred in entering the summary judgment in favor of Hill and HGH. Specifically, Williams and WGH argue that the trial court erred in concluding that the alleged oral agreement between the parties was not enforceable due to application of the Statute of Frauds, Ala.Code 1975, § 8-9-2. Williams and WGH further argue that the trial court erred in concluding that, based on WGH’s violation of the Alabama Home Builders’ Licensure Act, Ala. Code 1975, § 34-14A-1 et seq, WGH could not recover the $20,000 it had expended in improving the real estate at 1551 Forest Street.
 

 Standard of Revieiv
 

 “ ‘
 
 “We review this case
 
 de novo,
 
 applying the oft-stated principles governing appellate review of a trial court’s grant or denial of a summary judgment motion:
 

 “ ‘ “ We apply the same standard of review the trial court used in’ determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’ ” ’
 

 “General Motors Corp. v. Kilgore,
 
 853 So.2d 171, 173 (Ala.2002) (quoting
 
 Amer
 
 
 *232
 

 ican Liberty Ins. Co. v. AmSouth Bank,
 
 825 So.2d 786, 790 (Ala.2002)).”
 

 Ex parte Essary,
 
 992 So.2d 5, 8 (Ala.2007).
 

 Facts
 

 Williams attested by affidavit that in 2001 she had assisted Charles Williams, her brother, in starting a business operating group homes for developmentally disabled individuals, which business became WGH. Williams further testified by affidavit that, in March 2003, she entered into an oral agreement to provide Hill, her sister, the same assistance to enable her to start and maintain a similar business, which became HGH. Williams swore that, in exchange for her providing consulting services in starting up the business and assisting in maintaining the business, Hill, on behalf of HGH, had agreed to pay her 60% of the net profits generated from the operation of a group home for developmentally disabled individuals. Williams testified that this agreement was “pei’pet-ual,” in effect “so long as the business lasted.” Williams further testified in her affidavit that she had provided all the necessary consulting services to allow HGH to operate by November 2003. Williams testified that, at that point, she presented a written contract to Hill to memorialize the agreement but that Hill refused to sign it. Hill, in her affidavit in support of the summary-judgment motion, flatly denies that she and Williams ever reached such an agreement and further denies that Williams ever tendered a written contract to her. Williams further testified that, after the business started, she intended to continue to assist Hill in obtaining clients to live in the home but that Hill abruptly terminated her involvement.
 

 Charles Williams, the principal officer of WGH and the brother of Williams and Hill, testified by affidavit that, in 2003, when Hill was contemplating starting a group-home business, he held an interest in property located at 1551 Forest Street that he had intended to develop into a group home for WGH. Exhibits placed into the record by Hill show, however, that Donald E. Jackson is the sole owner of the property in question, and Charles did not clarify the nature of his “interest” in the property. Charles averred that he had agreed on behalf of WGH to improve this property and to allow Hill to use it for HGH’s first group home. Charles stated in his affidavit that he had reached this agreement in exchange for Hill and HGH’s promise to reimburse WGH the $20,000 needed to improve the property to meet state standards for operation of a group home and, in addition, to use WGH’s professional services at a rate of 40 hours per week when operating the group home. It is undisputed that neither Charles Williams nor WGH is a licensed residential home builder.
 

 Analysis
 

 The Statute of Frauds
 

 Section 8-9-2 provides, in pertinent part:
 

 “In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing.
 

 “(1) Every agreement which, by its terms, is not to be performed within one year from the making thereof.”
 

 In order to bring a contract within the purview of § 8 — 9—2(1), the contract must be incapable of being performed within one year.
 
 Hornady v. Plaza Realty Co.,
 
 437 So.2d 591, 592 (Ala.Civ.App.1983);
 
 Hill v.
 
 
 *233
 

 Raney Ins. Agency of Anderson, Inc.,
 
 474 So.2d 738, 739 (Ala.Civ.App.1985).
 

 In her brief to this court, Williams argues that her alleged agreement with Hill and HGH does not fall within the ambit of § 8 — 9—2(1) because, she says, she agreed only to provide consulting services to enable Hill to form HGH and qualify to do business as a group home. Williams points out that she provided all the services necessary to achieve this objective by November 2003. Thus, Williams argues, her performance under the alleged agreement was completed in less than one year. However, Williams overlooks her own testimony indicating that she had agreed to provide continuing consulting services, including assisting in obtaining clients for HGH’s group home, throughout the life of the business. Williams makes no argument that the terms of the alleged agreement would have allowed her to perform fully those continuing consulting services by the end of one year. Rather, by her own testimony, she understood that she would be acting as a consultant perpetually so long as the business lasted.
 
 See Cox Nuclear Pharmacy, Inc. v. CTI, Inc.,
 
 478 F.3d 1303, 1309-10 (11th Cir.2007) (noncompete agreement violated Statute of Frauds when party seeking to enforce the agreement expected that it would be in force far beyond one year).
 
 [1]
 
 Based on the undisputed evidence in the record, we conclude that the trial court properly found that the alleged oral agreement between Williams, on the one hand, and Hill and HGH, on the other, was not enforceable pursuant to § 8-9-2(1), and we therefore affirm the summary judgment entered against Williams.
 

 The Residential Home Builders License
 

 Section 34-14A-14, Ala.Code 1975, provides, in pertinent part:
 

 “A residential home builder, who does not have the license required, may not bring or maintain any action to enforce the provisions of any contract for residential home building which he or she entered into in violation of this chapter.”
 
 [2]
 

 Applicable caselaw construing § 34-14A-14 provides that an unlicensed residential home builder has no standing to maintain a civil action seeking payment on a contract for residential home building.
 
 See, e.g., Hollinger v. Wells,
 
 3 So.3d 216 (Ala.Civ.App.2008);
 
 Hooks v. Pickens,
 
 940 So.2d 1029, 1033 (Ala.Civ.App.2006). A “residential home builder” is defined as:
 

 “One who constructs a residence or structure for sale or who, for a fixed price, commission, fee, or wage, undertakes or offers to undertake the construction or superintending of the construction, of any residence or structure which is not over three floors in height and which does not have more than four units in an apartment complex, or the repair, improvement, or reimprovement thereof, to be used by another as a residence when the cost of the undertak
 
 *234
 
 ing exceeds ten thousand dollars ($10,-000).”
 

 Ala.Code 1975, § 34-14A-2(10).
 
 [3]
 

 The materials submitted by Hill and HGH establish that WGH repaired, improved, or reimproved the structure located at 1551 Forrest Street for the purpose of readying it for use as a residence by the clients of HGH. As such, WGH fits the general definition of residential home builder based on the last clause of § 34-14A-2(10) quoted above. Hill did not intend to reside in the structure and, therefore, WGH did not act as a consultant to Hill or HGH as a “homeowner”; however, we read the definition in § 34-14A-2(10) as disjunctive so that, if an entity qualifies as a “residential home builder” under one clause, the fact that the entity does not qualify under another clause is immaterial. Hence, we agree with the trial court that WGH acted as a residential home builder by expending $20,000 to improve the property located at 1551 Forrest Street for use as a group home.
 

 WGH argues that it is exempt from the licensing requirement pursuant to the next-to-last sentence of § 34-14A-2(10). That sentence states: “Nothing herein shall prevent any person from performing these acts on his or her own residence or on his or her other real estate holdings.” WGH maintains that “there is no dispute that the property in question was held by [WGH] at the time the repairs and upgrade were made to it.” To the contrary, as part of their motion for a summary judgment, Hill and HGH submitted evidence indicating that the property in question has been owned exclusively and continuously by Donald E. Jackson since 2002, well before the time the improvements were made, and, thus, was not a “real estate holding” of WGH. In response, Charles Williams, the principal officer of WGH, filed an affidavit indicating only that he had “an interest” in the property. Charles did not specify the nature of that interest or provide any admissible evidence refuting that Jackson had complete ownership in the property. In ruling on a motion for a summary judgment, a court need not consider conclusory affidavits not supported by admissible facts.
 
 See Casey v. McConnell,
 
 975 So.2d 384, 388 (Ala.Civ.App.2007). Rather, a nonmovant must present specific facts to create a genuine issue of material fact.
 
 See
 
 Rule 56(e), Ala. R. Civ. P. Charles’s affidavit utterly fails to present sufficient facts indicating that the property located at 1551 Forrest Street could be considered a “real estate holding” of WGH, thus exempting WGH from obtaining a license to conduct repairs on the property.
 

 Because WGH has failed to present substantial evidence indicating that it is exempt from the licensing requirements of § 34-14A-1 et seq., and because it is undisputed that WGH was not licensed to make the improvements on the property at issue, we conclude that WGH has no standing to maintain a civil action seeking reimbursement and other consideration for improving the property. Without such standing, WGH is not a proper party to this appeal, and this court has no choice but to dismiss that portion of the appeal relating to WGH’s claims against Hill and HGH.
 
 See Hollinger, supra.
 

 
 *235
 
 APPEAL DISMISSED IN PART; AFFIRMED IN PART.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . Williams does not argue that the business could have closed within one year, thus allowing all the obligations under the alleged oral agreement to be performed within that period. It is not the function of an appellate court to advocate a position on behalf of an appellant.
 
 Schiesz v. Schiesz,
 
 941 So.2d 279 (Ala.Civ.App.2006). Therefore, we do not address that unraised argument.
 

 [2]
 

 . In 2006, the legislature amended § 34-14A-14 to substitute the word "shall” for "may” in the above-quoted portion of § 34-14A-14. Because the prior version was in effect when the improvements at issue in the present case were made, we are using the former version. We do not, however, intend to imply that the case would be decided differently under the new version.
 

 [3]
 

 . In 2006, the legislature amended § 34-14A-2(10) by inserting "or who manages, supervises, assists, or provides consultation to a homeowner regarding the construction or superintending of the construction” following the phrase "undertakes or offers to undertake the construction or superintending of the construction,” in the above-quoted portion of § 34-14A-2(10).
 
 See also
 
 note 2,
 
 infra.